*This opinion is subject to revision before final publication in the Pacific Reporter*

**2026 UT 15**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

RV HOLDINGS 4, LLC and RIDGEVIEW CAPITAL, LLC,
*Appellees,*

*v.*

STANDARD FIBER INVESTORS, LLC and STANDARD FIBER, LLC,
*Appellants.*

No. 20230882
Heard November 7, 2025
Filed July 9, 2026*

On Direct Appeal

Third District Court, Salt Lake County
The Honorable Randall N. Skanchy
No. 200900672

Attorneys:

Jefferson W. Gross, Melinda Checketts, Salt Lake City

Cameron M. Hancock, Dax Anderson, Justin W. Starr, Christopher A. Bates, Salt Lake City, Mortimer Hartwell, S. Fran., Cal., for appellants

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which JUSTICE PETERSEN, ASSOCIATE CHIEF JUSTICE POHLMAN, JUSTICE NIELSEN, and JUDGE ELDRIDGE joined.

Due to his retirement, JUSTICE PEARCE did not participate herein; DISTRICT COURT JUDGE JARED W. ELDRIDGE sat.

JUSTICE HAGEN stepped down from the court before this case was decided. JUSTICE NIELSEN, having reviewed the briefs and listened

---

* As of January 31, 2026, "The Supreme Court consists of seven justices." UTAH CODE § 78A-3-101(1). Pursuant to Utah Supreme Court Standing Order No. 18, this court sat and rendered judgment in this matter as a division of five justices.

to a recording of the oral argument, substituted for JUSTICE HAGEN and participated fully in this decision.

———————

CHIEF JUSTICE DURRANT, opinion of the Court:

**INTRODUCTION**[1]

¶1    Standard Fiber, LLC (Standard Fiber) and Ridgeview[2] entered into a business relationship that deteriorated when it became unclear what management fees were owed and to whom. The parties sought to resolve their differences through arbitration. But when that process produced unexpected results, Standard Fiber sought review of the arbitration award.

¶2    Standard Fiber asserts that the arbitrator (Arbitrator) based her award on a claim for breach of a 2014 management fee agreement (2014 Agreement) that Ridgeview never asserted in its arbitration demand. And under Utah law, an arbitrator's authority is limited to the issues that parties submit for decision.

¶3    In reviewing the written arbitration demands, we conclude that Ridgeview did not raise a breach of the 2014 Agreement as a basis for an award. In fact, Ridgeview disavowed its existence. The Arbitrator therefore improperly granted an award on an unsubmitted claim. So we remand to the district court to modify the award and exclude any amount stemming from the 2014 Agreement.

—————————————————

[1] This dispute involves multiple related business entities and individuals who appear throughout the record both individually and under collective shorthand references. Since the parties' briefs and arbitration proceedings frequently employ overlapping and inconsistent terminology, we will use shorthand names for clear identification and understanding of each claim, defense, and arbitration issue. Unless otherwise specified, the terms defined below are used solely for clarity and not to collapse legally distinct entities.

[2] Standard Fiber conducted business with multiple entities who are affiliated with the name "Ridgeview." This includes Ridgeview Capital, LLC; Ridgeview Capital Management, LLC; and RV Holdings 4, LLC. "Ridgeview" will be used to refer to these various parties collectively.

## BACKGROUND

¶4 Standard Fiber is the operating company at the center of this dispute. It manufactures and sells bedding and other soft goods. In May and June 2006, Standard Fiber Investors, LLC (SFI) formed to invest in Standard Fiber. SFI then purchased a majority interest in Standard Fiber and later increased that interest to eighty-five percent. SFI's members initially included investment group WR/SF Investment, LLC (WR/SF), managed by Glenn Boschetto, and a group of investors recruited by Greg Larson and Burton Stohl (collectively the "Ridgeview Investors"). WR/SF contributed a majority of the original investment capital, with Ridgeview Investors contributing the remaining funds.

¶5 In June 2006, Standard Fiber and Ridgeview Capital, LLC (RV Capital) executed a written Management Services Agreement (2006 MSA). This 2006 MSA had a two-year term but could be extended. RV Capital agreed to provide financial and accounting oversight and related consulting in exchange for a $250,000 annual base fee with a potential $250,000 incentive fee. These kinds of fees were referred to as "management fees."

¶6 Standard Fiber paid management fees beginning in 2006 to RV Capital and to WindRiver.[3] The Arbitrator found the 2006 MSA terminated no later than 2008. Payments to Ridgeview-related and WindRiver/Boschetto-related entities continued under informal arrangements and varied over time. The parties agree that management fee payments continued after 2008 but disagree on the governing terms.

¶7 Ridgeview Capital Management, LLC (RCM) is a related entity formed in approximately 2009. RV Capital at times assigned its right to receive management fees to RCM.

¶8 Beginning in 2013, the parties' dealings included (1) discussions about fee amounts and (2) Standard Fiber transferring funds to a Larson-controlled bank account for profit and tax distributions to Ridgeview-recruited SFI investors. As to management fees, Standard Fiber maintains that the parties reached updated arrangements in 2011, 2013, and 2014, including the 2014 Agreement to pay RV Capital $25,000 per month ($300,000 annually). From 2014 until July 2020, Ridgeview invoiced, and

---

[3] WindRiver is an entity affiliated with Boschetto, the manager of WR/SF.

Standard Fiber paid, $25,000 per month. Standard Fiber then stopped paying management fees in July 2020.

¶9    In January 2020,[4] RV Holdings 4, LLC (RV Holdings)[5] and RV Capital (later joined by RCM) sued Standard Fiber and alleged that after the 2006 MSA was signed, Boschetto and Larson agreed to divide management fees 50/50 between RV Capital and WindRiver. They sought unpaid management fees under this alleged oral agreement. Standard Fiber moved to compel arbitration through the parties' operating agreement. The district court granted the motion and stayed the action so the parties could arbitrate.

¶10 In July 2020, Ridgeview filed its arbitration demand, which incorporated the complaint and asserted several claims. As relevant to management fees, Ridgeview expressly advanced (1) a claim that the 2006 MSA had not expired in 2008 and required payment of base and incentive fees and (2) a claim that Larson and Boschetto had an oral agreement to split management fees 50/50 (50/50 Agreement) between Ridgeview-related and Boschetto-related entities. Notably, Ridgeview did not separately include a claim that Standard Fiber breached a 2014 oral agreement to pay $25,000 per month.

¶11 In August 2020, Standard Fiber filed its own arbitration demand. In its demand, Standard Fiber denied that the 2006 MSA remained operative, denied the existence of the 50/50 Agreement, and asserted that the parties' management-fee arrangements had changed over time, including in 2011, 2013, and 2014.

¶12 Both arbitration matters were filed with Judicial Arbitration and Mediation Services (JAMS). The two matters were consolidated and proceeded before a single arbitrator. The parties submitted pre-hearing and post-hearing briefs and participated in a three-day evidentiary hearing in August 2022. The parties also filed a joint statement of stipulated facts that included a schedule

---

[4] Though Ridgeview filed suit in January 2020, Standard Fiber continued to pay Ridgeview until July 2020, when Standard Fiber allegedly discovered that Ridgeview had misappropriated funds. The present issues before this court do not involve this alleged misappropriation.

[5] RV Holdings is an affiliated investment entity associated with the same principals as Ridgeview Capital.

of management fee payments paid through July 2020 and acknowledged that payments stopped after that.

¶13   In its briefs to the Arbitrator, Ridgeview maintained that (1) the 2006 MSA had not terminated and required payment of the contractual fees, and alternatively, that (2) the 50/50 Agreement entitled Ridgeview to parity with Boschetto-related entities. Ridgeview's presentation on damages tracked those two theories. Again, Ridgeview did not assert a claim against Standard Fiber for breach of the 2014 Agreement.

¶14   Standard Fiber argued in opposition that the 2006 MSA terminated in 2008, that no 50/50 Agreement existed, and that the parties' course of dealing showed new, governing fee agreements in 2011, 2013, and 2014—specifically identifying the 2014 Agreement at $25,000 per month paid through July 2020. In this context, Standard Fiber asserted that nothing further was owed under those later arrangements. And in connection with those defenses and affirmative allegations, Standard Fiber produced evidence that referenced the 2014 Agreement at $25,000 per month and attached or cited documents and invoices reflecting payments at that amount through July 2020.

¶15   The Arbitrator found that the 2006 MSA ended no later than 2008 and that there was no persuasive evidence of the 50/50 Agreement's existence.[6] The Arbitrator also found that, in 2014, the parties agreed to pay Ridgeview $25,000 per month, and that Ridgeview invoiced and was paid that amount from 2014 through July 2020. Based on this finding, the Arbitrator awarded Ridgeview Capital $725,000 for unpaid management fees for August 2020 through December 2022, plus interest. The Arbitrator rejected the parties' remaining claims and counterclaims.

¶16   Ridgeview moved the district court to confirm the award. Standard Fiber cross moved to modify or partially vacate the award. Standard Fiber argued, among other things, that the Arbitrator exceeded her authority by awarding damages on a claim (breach of the 2014 Agreement) that Ridgeview had not pleaded or

---

[6] The Arbitrator considered and dismissed several other claims and counterclaims including: (1) breach of fiduciary duty, (2) civil conspiracy, (3) aiding and abetting, (4) tortious interference with prospective economic advantage, (5) fraud and intentional misrepresentation, and (6) breach of settlement agreement.

submitted, and that doing so was contrary to the notice-pleading and amendment requirements of the applicable JAMS rules. The district court confirmed the award, concluding that the Arbitrator's resolution was rationally related to the claims and arguments the parties presented, including their competing characterizations of an evolving management-fee relationship.

¶17 The day after the district court confirmed the award, Ridgeview filed a second demand for arbitration with JAMS. It alleged a breach of the 2014 Agreement and sought $25,000 per month from January 2023 forward under that agreement. In response, Standard Fiber filed a motion to alter or amend judgment. Standard Fiber argued that Ridgeview's second demand for arbitration constituted "new" or "surprise" evidence sufficient to alter or amend judgment.

¶18 The next day, Standard Fiber filed its notice of appeal. Several months later, the district court denied Standard Fiber's motion to alter or amend judgment. Standard Fiber now appeals the district court's decision confirming the arbitration award and its denial of its motion to alter or amend the judgment.

## ISSUES AND STANDARD OF REVIEW

¶19 Standard Fiber raises three issues. First, it challenges the district court's denial of its motion to modify or vacate the arbitration award. Second, it challenges the district court's denial of its motion to alter or amend the judgment under rule 59(e) of the Utah Rules of Civil Procedure. And third, in the alternative, Standard Fiber appeals the court's denial of its motion under rule 60(b) of the Utah Rules of Civil Procedure. Because we conclude that the court erred in denying Standard Fiber's motion to modify the arbitration award, we need not reach issues related to rules 59(e) or 60(b).

¶20 We grant no deference to a district court's order confirming, vacating, or modifying an arbitration award.[7] Rather, we review the order for correctness.[8]

## ANALYSIS

¶21 We begin by addressing the level of deference courts owe when reviewing whether a claim has been submitted to arbitration.

---

[7] *See Pac. Dev., L.C. v. Orton*, 2001 UT 36, ¶¶ 6–7, 23 P.3d 1035.

[8] *Id.*

Although Ridgeview urges a broad, arbitration-favoring approach, we clarify that any deference is directed to determining the scope of submitted issues—not to arbitration generally. With that framework in place, we then consider whether Ridgeview submitted a claim for breach of the 2014 Agreement to the Arbitrator.

I. *GRIMMER* AND ITS PROGENY MUST BE CLARIFIED TO AVOID GIVING TOO MUCH DEFERENCE TO THE ARBITRATION PROCESS

¶22 Before we address the specific issue of whether the 2014 Agreement was before the Arbitrator, we first clarify the deference we give to arbitrators generally. Ridgeview rests much of its argument on the notion that we must "resolve all doubts in favor of arbitration."[9] This broad, arbitration-favoring standard of review misstates how a court must approach reviewing arbitration. So we take this opportunity to make clear how much deference courts owe to an arbitrator when reviewing an arbitration award.

¶23 It is true that the court of appeals has stated that "in deciding whether the arbitrator exceeded its authority, we resolve all doubts in favor of arbitration."[10] Read broadly, that formulation suggests that any uncertainty arising during judicial review must be resolved in favor of the arbitration process itself. But this understanding overstates the deference owed and departs from the phrase's original and intended meaning.

¶24 The phrase traces back to the United States Supreme Court's decision in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, where the Court addressed how to resolve close questions of arbitrability.[11] The Court explained that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," whether the issue involved contract interpretation or defenses such as waiver or delay.[12] In its original context, the principle operated as a gateway rule—favoring

---

[9] (Quoting *Grimmer & Assocs., P.C. v. NRLA, LLC*, 2024 UT App 131, ¶ 28, 557 P.3d 626 (cleaned up).)

[10] *Id.* (cleaned up); *Shipp v. Peterson*, 2021 UT App 25, ¶ 14, 486 P.3d 70 (cleaned up).

[11] 460 U.S. 1, 24–25 (1993).

[12] *Id.*

arbitration only when there was uncertainty about whether a particular dispute was subject to arbitration in the first place.

¶25 But as the phrase developed through subsequent caselaw, it gradually expanded beyond that limited function. In particular, the Fifth Circuit reformulated the principle as: "[i]n determining whether the arbitrator exceeded his jurisdiction, we resolve all doubts in favor of arbitration."[13] It is this broader phrasing that later appeared in Utah's jurisprudence, first in *Pacific Development, L.C. v. Orton*, where the court of appeals cited the Fifth Circuit.[14]

¶26 Continuing to apply the phrase in that expansive manner would depart from the Supreme Court's reasoning in *Mercury Construction* and afford greater deference to arbitration than our law requires. While arbitrators are, at times, entitled to substantial deference,[15] the judiciary remains obligated to ensure that arbitrators act within the bounds of the authority conferred upon them. We therefore disavow the phrase's overbroad use and reaffirm its original application. When reviewing arbitration awards, courts are to resolve doubts only as to the scope of arbitrable issues in favor of arbitration. That is, when there is ambiguity about whether a claim or issue is arbitrable, we resolve any uncertainty in favor of arbitration. But courts are not required to always favor arbitration awards in every aspect of their review. Instead, courts must, without putting a thumb on the scale, assess whether an arbitrator exceeded the authority granted by the parties or any other bases for vacating, modifying, or correcting an award.[16]

---

[13] *See Valentine Sugars, Inc. v. Donau Corp.*, 981 F.2d 210, 213 (5th Cir. 1983) (citing *Moses*, 460 U.S. at 24–25).

[14] *See* 1999 UT App 217, ¶ 7, 982 P.2d 94 (quoting *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1320 (5th Cir. 1994)).

[15] *See Buzas Baseball, Inc. v. Salt Lake Trappers, Inc.*, 925 P.2d 941, 947 (Utah 1996) ("[T]he trial court may not substitute its judgment for that of the arbitrator, nor may it modify or vacate an award because it disagrees with the arbitrator's assessment").

[16] *See* UTAH CODE §§ 78B-11-124, 125(1)(b).

II. MODIFICATION OF THE AWARD IS APPROPRIATE

A. *RV Holdings Did Not Submit a Claim for Breach of the 2014 Agreement to the Arbitrator, So We Overturn the District Court's Denial of Standard Fiber's Motion to Modify the Arbitrator's Award to RV Holdings Based on that Agreement*

¶27 Understanding that we give deference only to the arbitrability of issues, we now consider whether the Arbitrator improperly awarded damages based upon the 2014 Agreement and, consequently, whether the arbitration award should be modified accordingly.

¶28 An arbitrator's authority is defined in the first instance by the arbitration agreement, which sets the outer bounds of the arbitrator's power and defines the scope of the parties' dispute.[17] If an arbitrator exceeds the bounds of her authority beyond that agreement, vacatur may be required.[18] But the modification inquiry under Utah Code section 78B-11-125 is narrower and requires the court to go deeper than looking to the general bounds of the arbitrator's authority. It requires the court to determine whether the arbitrator made an award on an unsubmitted claim.[19] Specifically, whether a party who received an award under a claim actually submitted that claim for arbitration. This is one way an arbitrator exceeds the bounds of the written arbitration agreement,[20] to which the legislature has prescribed a specific remedy.[21]

¶29 And section 125(1)(b) requires more than just a determination that an unsubmitted claim was decided. The statute imposes a second limitation: the award may be modified only if the improper portion can be corrected "without affecting the merits of

---

[17] *Allstate Ins. Co. v. Wong*, 2005 UT 51, ¶ 21, 122 P.3d 589.

[18] UTAH CODE § 78B-11-124(1)(d).

[19] *Id.* § 78B-11-125(1)(b).

[20] The claims submitted by parties may be in the arbitration agreement. They may also be found in the arbitration demand, such as in this case. So, for our analysis, we will look to the arbitration demands to determine whether a claim was submitted.

[21] UTAH CODE § 78B-11-125(1)(b).

the decision upon the claims submitted."[22] Meaning, even after finding that the arbitrator made an award based on an unsubmitted claim, a failure to meet this second prong makes modification unavailable.[23] In fact, vacatur is the appropriate remedy in that instance.[24]

¶30  All of this is to say that vacatur and modification analyses may resemble one another at the outset because both require the courts to consider the scope of the arbitrator's authority as defined by the parties. But the legislature treated awards on unsubmitted claims as a distinct scenario and prescribed a specific course of action. When the error consists of deciding a claim not submitted, and the improper portion is severable, the statute directs modification rather than vacatur.

¶31 Standard Fiber contends that the Arbitrator made an award based on a 2014 Agreement claim that was never submitted by RV Holdings. That contention places this case squarely within section 125(1)(b). We therefore begin by determining whether the 2014 Agreement claim was in fact submitted to the Arbitrator by RV Holdings.

¶32  Parties may expressly limit an arbitrator's jurisdiction in their arbitration agreement.[25] The claims submitted through the arbitration demand may further limit the scope of the arbitrator's authority and the issues they may reach.[26] So the arbitration agreement and arbitration demand create the boundaries for the arbitrator. But within those boundaries the arbitrator may issue an

---

[22] *Id.*

[23] *See Allstate*, 2005 UT 51, ¶¶ 19, 27.

[24] *See id.* ¶ 27.

[25] *See Pac. Dev. L.C. v. Orton*, 2001 UT 36, ¶ 9, 23 P.3d 1035 (holding that the arbitrator exceeded his authority when he issued an award for a plot of land specifically excluded from the arbitration agreement).

[26] *See* UTAH CODE § 78B-11-125(1)(b); *Intermountain Power Agency v. Union Pac. R.R. Co.*, 961 P.2d 320, 323–24 (Utah 1998) ("We have clearly held under the above statutory framework for vacating an arbitration award that an arbitrator exceeds his or her powers if the arbitrator strays beyond the scope of the questions submitted for arbitration by the parties.").

award to a party so long as the award is rationally related to the claims submitted by that party in the arbitration demand or agreement.[27]

¶33 Importantly, when determining the bounds of the issues submitted for arbitration, we must look only to the written arbitration agreement and demands.[28] During the arbitration process, the parties may introduce evidence on a variety of topics.[29] But the arbitrator's authority to decide claims comes from what the parties submitted for decision in writing, and that authority doesn't expand just because someone offered evidence on another, unsubmitted issue.[30] So, in assessing the scope of the issues submitted to arbitration, we will not consider what evidence the parties brought during the arbitration. We look only at the arbitration agreement and demands submitted to the arbitrator.

¶34 And this aligns well with the governing JAMS rule on notice, which applies in this case. Under JAMS rule 9, "Each Party shall afford all other Parties reasonable and timely notice of its claims, affirmative defenses or counterclaims."[31] "No claim, remedy, counterclaim or affirmative defense will be considered by the Arbitrator in the absence of such prior notice to the other Parties. . . ."[32] When a party merely alludes to something in a defense or crossclaim, it does not put the other party on notice that it might later become a claim for damages.[33] If that were so, then parties would have to prepare to defend against even the most attenuated issues so long as there is some reference to it, no matter how thin.

¶35 Both RV Holdings and Standard Fiber submitted claims to the Arbitrator. As they pertained to awarding "management fees,"

---

[27] *Intermountain Power Agency*, 961 P.2d at 324.

[28] *Id.* at 323.

[29] *See id.* at 324.

[30] *See id.* at 323–24.

[31] JAMS COMPREHENSIVE ARB. R. & PROCS. 9(a) (JAMS 2021), https://www.jamsadr.com/rules-comprehensive-arbitration (last visited June 23, 2026).

[32] *Id.*

[33] *See id.*

Standard Fiber argues that RV Holdings limited the basis for its claims to the 2006 MSA and the alleged 50/50 Agreement. We agree. RV Holdings, in its submitted claims, clearly stated that these two agreements exist and that under these agreements management fees are owed to them. And it asserted that these are the only two agreements that exist and that they have not changed over the years.

¶36 RV Holdings counters that Standard Fiber's own submissions brought other agreements under the Arbitrator's jurisdiction, including the 2014 Agreement on which she ultimately based her award. The main contention here is whether the award to RV Holdings was based on a submitted claim. So we must look at what RV Holdings itself submitted as a basis for an award. And as we established, RV Holdings alleged breaches of only the 2006 MSA and the 50/50 Agreement.[34]

¶37 The record shows that at no point did RV Holdings itself assert a breach of the 2014 Agreement as a basis for recovering damages. Further, because RV Holdings did not make a claim for damages under this agreement, Standard Fiber did not receive notice as required by JAMS rule 9. Standard Fiber had no reason to believe that its own vague reference to other agreements would trigger a need to defend against a claim by RV Holdings for breach of the 2014 Agreement.

¶38 RV Holdings also points to evidence presented by Standard Fiber to the Arbitrator to show that the 2014 Agreement fell within the scope of the arbitration. Specifically, during arbitration, Standard Fiber presented a chart that noted all alleged

---

[34] We also want to note that, even if we were to consider Standard Fiber's crossclaims and defenses, only one statement could plausibly be read as referencing that agreement. Standard Fiber asserted that RV Holdings collected unwarranted management fees and should be required to "disgorge any and all compensation they received from Standard Fiber." In doing so, it generally referenced RV Holdings' "long-term management services agreement with Standard Fiber." Even so, Standard Fiber did not identify the 2014 Agreement as a distinct basis for relief and did not prevail on its disgorgement claim, and RV Holdings never sought an award under that agreement. To point generally at the existence of an unspecified management service agreement does not suffice to render the 2014 Agreement a submitted claim.

agreements for management fees, including the 2014 Agreement. But as we said in *Pacific Development*, evidence presented during the arbitration process does not expand the claims in front of the arbitrator.[35] Evidence may reference matters outside the submitted claims, but the arbitrator's authority is limited to awarding relief on claims properly submitted pursuant to the arbitration agreement or demand—regardless of the evidence presented.[36]

¶39  Accordingly, because RV Holdings expressly disavowed the 2014 Agreement and did not seek recovery for breach of it, the Arbitrator could not award damages based on that agreement. And though Standard Fiber tangentially referenced the 2014 Agreement, the relevant inquiry is on what RV Holdings submitted as the basis for its relief. So we hold that RV Holdings failed to submit the 2014 Agreement to the Arbitrator and the Arbitrator therefore could not grant an award to RV Holdings on that basis. And because we resolve Standard Fiber's appeal on this ground, we need not reach its other claims.

### B. The Award May Be Corrected Without Affecting the Underlying Decision.

¶40 RV Holdings submitted claims for management fees stemming from breach of the 50/50 Agreement and the 2006 MSA.[37] The Arbitrator ultimately rejected these claims and rested her award on a breach of the 2014 Agreement. But because we have determined that RV Holdings did not submit a claim for breach of the 2014 Agreement, our remaining task is to now determine whether this decision affects the other claims that the Arbitrator rejected. [38]

---

[35] *See Pac. Dev.*, 2001 UT 36, ¶¶ 9–10 (discussing how despite evidence being presented about a certain plot of land, that plot was not submitted in the formal written agreement to arbitrate, so the plot remained outside of the scope of issues available to be arbitrated).

[36] *Id.; see also Intermountain Power Agency*, 961 P.2d at 323.

[37] These two claims were the main focus of RV Holdings' arbitration demand. There were several other claims the Arbitrator considered and dismissed. *See supra* ¶ 15 n.6.

[38] UTAH CODE § 78B-11-125(1)(b).

¶41 The Utah Uniform Arbitration Act distinguishes between when an arbitration award must be vacated and when it must be modified. A court must vacate an award if the arbitrator exceeds her authority.[39] But if the arbitrator makes an award based on an unsubmitted claim and fixing that error would not affect the rest of the decision, then the court must modify or correct rather than vacate the award.[40]

¶42 To modify the award we must first determine that the Arbitrator's award is based on an unsubmitted claim.[41] And we also must find that modifying the award will not affect the merits of the decision.[42] In *Allstate Insurance Co. v. Wong*, we clarified that this calculus should focus on whether severing the award based on the unsubmitted claim would leave the rest of the award based on submitted claims salvageable.[43]

¶43 Here, the Arbitrator rejected all of RV Holdings' remaining claims for lack of persuasive evidence.[44] Those determinations are independent of the $725,000 award based on the 2014 Agreement. Although modification would reduce the total award, potentially to zero, the relevant inquiry is not the size of the remaining award but whether the improper portion can be severed without affecting the merits underlying the rest of the decision.[45] And a determination that an additional claim was not properly before the Arbitrator does not make the submitted-and-rejected claims any more supported; it simply leaves fewer—indeed, no—adjudicated grounds to support an award.

---

[39] UTAH CODE § 78B-11-124(1)(d) ("[T]he court shall vacate an award made in the arbitration proceeding if . . . an arbitrator exceeded the arbitrator's authority.").

[40] *Id.* § 78B-11-125(1)(b) ("[T]he court shall modify or correct the award if . . . the arbitrator has made an award on a claim not submitted to the arbitrator and the award may be corrected without affecting the merits of the decision upon the claims submitted.").

[41] *Id.*

[42] *Id.*

[43] *Allstate Ins. Co v. Wong*, 2005 UT 51, ¶ 27, 122 P.3d 589.

[44] *See supra* ¶ 40 n. 37.

[45] *Allstate*, 2005 UT 51, ¶ 27.

¶44 Because the award attributable to a claim for breach of the 2014 Agreement is separable from the Arbitrator's other rulings, and because excising it does not alter the Arbitrator's conclusion that the remaining claims failed for lack of proof, modification is appropriate. So the district court erred when it denied Standard Fiber's motion to modify the arbitration award and remove any award based on the 2014 Agreement.

## CONCLUSION

¶45 In reviewing the written arbitration demands, we see references to the 2014 Agreement. But nothing in these demands could be considered a submitted claim by RV Holdings against Standard Fiber for breach of the 2014 Agreement. Because RV Holdings did not present the 2014 Agreement as a basis for relief, it was not within the Arbitrator's authority to award relief on that basis. Our conclusion rests on that lack of submission, not on resolving doubts in favor of arbitration generally, and it is consistent with the limits on deference we now clarify since *Pacific Development* and its progeny through *Grimmer*. Accordingly, we remand to the district court for modification of the award to exclude any amount based on the unsubmitted 2014 Agreement claim.

———————